**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANNA RUSSO and TORRY ARGIRO, | ) | |
| | ) | No. 2:21-cv-1891 |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge Robert J. Colville |
| | ) | |
| JOSHUA LAMANCUSA, individually and in his capacity as LAWRENCE COUNTY DISTRICT ATTORNEY; and RICHARD RYHAL, individually and in his capacity as SPECIAL INVESTIGATION UNIT DETECTIVE, | ) ) ) | |
| | | |
| Defendants. | | |

**OPINION**

Robert J. Colville, United States District Judge

Before the Court are the Motions to Dismiss of Defendants Joshua Lamancusa, individually and in his capacity as Lawrence County District Attorney (ECF No. 32) (hereinafter "Mr. Lamancusa"); and Richard Ryhal, individually and in his capacity as Special Investigation Unit Detective (ECF No. 45) (hereinafter "Mr. Ryhal").  The Motions have been fully briefed and are ripe for disposition.

**I.     Introduction and Factual Background**

**A.  Procedural History**

Plaintiffs filed their Complaint against Mr. Lamancusa in state court on November 29, 2021.  (ECF No. 1).  Mr. Lamancusa filed a Notice of Removal to this Court on December 29, 2021.  *Id.*  Following the removal of the Complaint, Mr. Lamancusa filed a Motion to Dismiss and Motion to Strike (ECF No. 8).  In response, Plaintiffs filed their First Amended Complaint against Mr. Lamancusa on March 11, 2022.  (ECF No. 10).  Then, following Mr. Lamancusa's filing of a

Motion to Dismiss and Motion to Strike the First Amended Complaint (ECF No. 14), Plaintiffs filed their Second Amended Complaint, with leave from the Court, on July 15, 2022, against both Mr. Lamancusa and Mr. Ryhal.  (ECF No. 29).

On August 10, 2022, following the filing of the Second Amended Complaint, Mr. Lamancusa filed his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and a Motion to Strike pursuant to Fed. R. Civ. P. 12(f) (ECF No. 32) with a Brief in Support.  (ECF No. 33).  Plaintiffs filed their response on August 31, 2022.  (ECF No. 34).  Mr. Lamancusa then filed his Reply Brief on September 7, 2022.  (ECF No. 35).

Then, on October 19, 2022, Mr. Ryhal filed his Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Strike pursuant to Fed. R. Civ. P. 12(f).  (ECF No. 45) with a Brief in Support.  (ECF No. 46).  Plaintiffs filed their response on December 16, 2022.  (ECF No. 49.  Mr. Ryhal filed his Reply Brief on January 6, 2023.  (ECF No. 50).

### B.  Factual Background

Plaintiffs' Second Amended Complaint alleges that Mr. Lamancusa and Mr. Ryhal violated the Racketeer Influenced and Corrupt Organizations Act ("RICO), specifically 18 U.S.C. § 1962(c), and deprived Plaintiffs of their property without Due Process in violation of 42 U.S.C. § 1983.  Second Amended Compl. 33, 37.  In the Second Amended Complaint, Plaintiffs set forth the following factual allegations relevant to the Court's consideration of the Motions at issue.  As the Court is deciding motions to dismiss, the Court will accept all allegations in the Second Amended Complaint as true for purposes of these motions.

Plaintiffs allege that Mr. Lamancusa, the District Attorney of Lawrence County, "operates a racketeering enterprise, namely the Special Investigation Unit of the Lawrence County Drug Task Force ("Special Investigation Unit"), that engages in a pattern of racketeering activity,

including extortion, Hobbs extortion, wire fraud, and interstate transportation in aid of racketeering, interfering with interstate commerce." Second Amended Compl. ⁋ 1. Plaintiff further alleges that Mr. Ryhal is a detective within the Special Investigation Unit. *Id.* at ⁋ 8.

In support of these allegations, Plaintiffs allege various schemes committed against Plaintiffs and two non-plaintiffs, Bryan Whiting ("Mr. Whiting") and Taylor Foley ("Ms. Foley").

### 1. *Allegations concerning Ms. Russo*

Ms. Russo is the mother of Robert Luptak ("Mr. Luptak") and the owner of ACRO Motors, an automobile dealership. Second Amended Compl. ⁋ 29. A confidential informant, employed by Mr. Lamancusa or the Special Investigation Unit, planted illegal drugs in a vehicle owned by Ms. Russo under the mistaken belief that it was owned by Mr. Luptak. *Id.* at ⁋ 32-33. Said vehicle was seized by Mr. Lamancusa or the Special Investigation Unit without a search warrant and was never returned. *Id.* at ⁋⁋ 35-36. Then, on October 23, 2014, a search was conducted on Ms. Russo's property and various items were seized. *Id.* at ⁋⁋ 39, 40. Mr. Luptak was arrested on drug charges the same day and a search was also conducted of Mr. Luptak's home wherein additional property was seized. *Id.* at ⁋⁋ 42-43. Mr. Lamancusa and members of the Special Investigation Unit were involved in questioning Mr. Luptak and during their questioning, Mr. Lamancusa asked Mr. Luptak if he could take a look around ACRO Motors for stolen items. *Id.* at ⁋⁋ 48, 52, 55. Mr. Luptak agreed to the search even though he did not have the authority to consent without the agreement of Ms. Russo. *Id.* at ⁋ 55. The Special Investigation Unit then conducted a search of ACRO Motors on October 23, 2014 and seized numerous vehicles and caused damage to Ms. Russo's property. *Id.* at ⁋⁋ 56, 60, 63. Ms. Russo spoke with Mr. Lamancusa later the same evening and Mr. Lamancusa informed Ms. Russo that he had the authority to search the property but never produced a search warrant. *Id.* at ⁋⁋ 57-59.

At a later meeting between Mr. Lamancusa and Mr. Luptak, Mr. Lamancusa stated that he would make the charges disappear if Mr. Luptak allowed him to keep everything that was confiscated. *Id.* at ¶ 65. Mr. Lamancusa also explained that he wanted Mr. Luptak to plant drugs and other contraband on other individuals. *Id.* at ¶ 67. Mr. Luptak denied these offers. *Id.* at ¶¶ 66, 69. Mr. Lamancusa met with Mr. Luptak again prior to Mr. Luptak's trial and told Mr. Luptak to think about what he wanted to do. *Id.* at 72-73. Mr. Luptak went to trial and was convicted and sentenced to 11 ½ to 23 years in prison. *Id.* at ¶ 74.

The seized vehicles and property remained in the possession of the District Attorney's Office until June 25, 2019, when the vehicles were returned to Ms. Russo. *Id.* at 75-76, 83. The Court of Common Pleas of Lawrence County had previously ordered on March 2, 2018, that the thirteen vehicles be returned to Ms. Russo. *Id.* at ¶ 79. At the time of their return, the vehicles were in disrepair. *Id.* at 86.

### 2. Allegations concerning Mr. Argiro

Mr. Argiro was arrested on August 30, 2019, following his girlfriend, Cassandra Walsh's allegations that he assaulted her. Second Amended Compl. ¶¶ 152, 155. The arresting officers also believed that the powder coat paint in Mr. Argiro's vehicle, which he possessed due to his job painting motorcycle parts, was some type of illegal narcotic. *Id.* at ¶ 159-60. Mr. Argiro denied being a drug dealer when asked by officers but admitted to using drugs. *Id.* at ¶¶ 161-62. Mr. Argiro was later sent home, but the police retained his vehicle. *Id.* at ¶¶ 169-70.

Three days later, Mr. Argiro was told he could pick up his vehicle from the Union Township Police Barracks, but upon his arrival, Mr. Argiro was apprehended by Mr. Ryhal. *Id.* at ¶¶ 171-72. Mr. Ryhal informed Mr. Argiro that the powder coat paint in his vehicle tested positive for cocaine. *Id.* at ¶ 173. During Mr. Argiro's subsequent interrogation, an officer asked Mr.

Ryahl what the powder coat paint should be called in the arrest warrant and Mr. Ryhal said heroin. *Id.* at ₱ 177.  Mr. Argiro was taken into custody and later released on bond and placed on house arrest which prevented him from working full time and ruined his credit score.  *Id.* at ₱₱ 178, 181. Mr. Argiro took a plea due to threats of additional charges by Mr. Lamancusa.  *Id.* at ₱₱ 183-84. Mr. Lamancusa and an associate of Mr. Lamancusa have continued to harass and threaten Mr. Argiro.  *Id.* at ₱₱ 185-88.

### 3.  *Allegations concerning Mr. Whiting*

Mr. Whiting was the owner of various businesses including a construction business, a long term stay hotel, and a roll-off business.  Second Amended Compl. ₱ 90.  Mr. Whiting suffered a traumatic brain injury in November of 2015 and decided to sell fifty percent of his roll-off business to businessmen James Mims ("Mr. Mims"), a friend of Mr. Lamancusa, and Allen Porter ("Mr. Porter").  *Id.* at ₱ 91, 110.

In December of 2015, Mr. Lamancusa spoke with the drivers of Mr. Whiting's roll-off business and implied that Mr. Whiting was breaking the law.  *Id.* at ₱ 92.  Mr. Lamancusa then held a meeting with Mr. Whiting, Mr. Whiting's attorney, Mr. Mims, and Mr. Porter in March of 2017 wherein Mr. Lamancusa accused Mr. Whiting of stealing money from the company.  *Id.* at ₱₱ 93-94.  Mr. Lamancusa told Mr. Whiting that if he agreed to sell additional portions of his business to Mr. Mims and Mr. Porter, then Mr. Lamancusa would not charge him.  *Id.* at ₱ 95.  Mr. Whiting did not agree and asked to speak with his attorney.  *Id.* at ₱ 96.  Following communications with Mr. Bonner, Mr. Whiting agreed to transfer the stock to Mr. Mims and Mr. Porter.  *Id.* at ₱ 105.  Mr. Bonner is an attorney affiliated with Mr. Whiting's attorney who was allegedly in communications with Mr. Lamancusa.  *Id.* at ₱ 98.  Mr. Whiting also transferred his remaining

shares to his wife. *Id.* at 106. His wife was further threatened by Mr. Mims and Mr. Porter that if she did not transfer the remaining shares, charges would be filed against Mr. Whiting. *Id.* at ¶ 107.

The Special Investigation Unit also conducted a search of the hotel owned by Mr. Whiting on September 13, 2017. Following the search, Mr. Whiting was arrested by the Special Investigation Unit and was transported to the police station by Mr. Ryhal. *Id.* at ¶¶ 125, 128. Mr. Ryhal asked other members of the Special Investigation Unit why Mr. Whiting was under arrest and was informed that Mr. Lamancusa directed that Mr. Whiting be arrested and brought in for questioning. *Id.* at ¶ 129. Mr. Whiting was later questioned by the Special Investigation Unit and Mr. Lamancusa on whether he knew anyone who sold drugs or if there were ever drugs sold and/or located in his hotel. *Id.* at ¶ 134. Mr. Whiting was then let go and told there would be no record of his arrest. *Id.* at ¶ 135.

Following her husband's arrest and additional threats by Mr. Mims and Mr. Porter, Mr. Whiting's wife sold her shares in the roll-off business to Mr. Mims and Mr. Porter. *Id.* at ¶ 139. Then, without notice to Mr. Whiting, his hotel was sold at a tax sale on September 29, 2017 to Mr. Mims who transferred the property to an LLC. *Id.* at ¶ 143. Mr. Whiting was never able to recover his personal belongings from the hotel. *Id.* at 148.

### 4. Allegations concerning Ms. Foley

Ms. Foley was the witness to a murder in November of 2013 when she witnessed a Mr. Platt shoot a Mr. Hogue. Second Amended Compl. ¶189. She went to the police station to provide a statement but was beaten by police officers, charged with several crimes, and taken to a juvenile facility. *Id.* at ¶¶ 190-92. While she was in the juvenile facility, CYS (Children & Youth Services) took custody of her child and informed her that she would get her son back after she testified against Mr. Platt and completed the necessary programs. *Id.* at ¶¶ 193-94. Ms. Foley testified

against Mr. Platt at his preliminary hearing, completed the programs, and was released from the juvenile facility in December of 2013. *Id.* at ¶ 196.

Following her release, Mr. Lamancusa met with Ms. Foley and asked her to work as a confidential informant with the promise her son would be returned to her if she accepted. *Id.* at ¶¶ 197-98. Mr. Lamancusa then told Ms. Foley how beautiful and smart she was and that if she did him a favor, he would do her a favor. *Id.* at ¶ 199-200. Ms. Foley believed that Mr. Lamancusa was attempting to extort sexual favors from her in addition to her working as a confidential informant and she informed him she was not interested. *Id.* at ¶¶ 201-02. Mr. Lamancusa then met with Ms. Foley again in April of 2014 and again made sexual advances towards her and offered his help. *Id.* at ¶¶ 203-05.

In February of 2015, Ms. Foley was arrested, and the District Attorney's office seized her car and some additional items that were never returned. Id. at ¶¶ 207-09. Following this arrest, Mr. Lamancusa began calling Ms. Foley and texting her asking her to cooperate and do him a favor or she would never see her son again. *Id.* at ¶¶ 210-13. Ms. Foley agreed to Mr. Lamancusa's requests in order to placate Mr. Lamancusa but had no intention of following through with his demands. *Id.* at ¶ 214. Mr. Lamancusa then dropped Ms. Foley's drug charges down to disorderly conduct and arranged for early termination of her probation. *Id.* at ¶ 215. Mr. Lamancusa then became angry when Ms. Foley declined to provide sexual favors and made unwanted advances towards Ms. Foley when he visited her. Id. at ¶219. Mr. Lamancusa also threatened to file charges if she did not act interested and stage text messages with him to prove she was indeed interested. *Id.* at ¶¶ 220-21. Then, in June of 2016, Mr. Platt's murder trial occurred, and Ms. Foley testified. *Id.* at ¶ 221. Following the trial, Ms. Foley's son was returned to her. *Id.* at 222.

## II.    Legal Standard

### A.  Motion to Strike

Rule 12(f) of the Fed. R. of Civ. P. provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 WL 4473228 at *3 (E.D. Pa. Sept. 28, 2012).  However, 12(f) motions to strike are disfavored and infrequently granted, usually only where the allegations have no relevance to the controversy and may prejudice the parties.  *Id.*  To prevail on a 12(f) motion, "the moving party must demonstrate that 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues.'"  *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 560 (E.D. Pa. 2018) (alteration in original) (quoting *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428-29 (E.D. Pa. 2007)).

### B.  Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A

"formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

9

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III.  Discussion

### A.  Motion to Strike

Both Mr. Lamancusa and Mr. Ryhal move to strike portions of Plaintiff's Second Amended Complaint that concern allegations related to Ms. Foley and Mr. Whiting.  Lamancusa Br. in Supp. 8-12; Ryhal Br. in Supp. 4-5.  Defendants' arguments to strike these portions of Plaintiffs' Second Amended Complaint will be addressed together as their arguments are almost identical and Mr. Ryhal has incorporated the arguments of Mr. Lamancusa in his motion to strike.  *See* Ryhal Br. in Supp. 5.

First, Defendants argue that Ms. Foley and Mr. Whiting both previously brought their own lawsuits in the Western District of Pennsylvania against Mr. Lamancusa on the same factual basis as those detailed in Plaintiffs' Second Amended Complaint.[1]  Lamancusa Br. in Supp. 9; Ryhal Br. in Supp. 5.  Ms. Foley and Mr. Whiting's lawsuits have since been resolved and as such Defendants argue that reference to these facts in Plaintiffs' Second Amended Complaint prejudices

---

[1] Defendants argue and Plaintiffs confirm that Mr. Whiting and Ms. Foley previously brough their own federal lawsuits that have been litigated to their conclusions.  Lamancusa Br. in Supp. 9; Ryhal Br. in Supp. 5; Pl. Br. in Opp'n to Lamancusa 9-10; Pl. Br. in Opp'n to Ryhal 6-7.  Defendants argue that Mr. Whiting's case, brought under Civil Action No. 2:18-cv-1398, ended in a settlement agreement.  Lamancusa Br. in Supp. 11.  Further, Defendants argue that Ms. Foley's case, brought under Civil Action No. 2:18-cv-1397, resulted in Magistrate Judge Dodge issuing an Opinion granting summary judgment in favor of the Defendants.  *Id.* at 9-10.  Plaintiffs agree that a settlement agreement was reached in Mr. Whiting's matter and that summary judgment was entered in Ms. Foley's matter but disagree with Defendants' characterization of the importance of these facts.  Pl. Br. in Opp'n to Lamancusa 9-10; Pl. Br. in Opp'n to Ryhal 6-7.

Defendants and is an attempt to defame and embarrass them.  Lamancusa Br. in Supp. 10-12; Ryhal Br. in Supp. 5.  Further, Defendants argue that because Ms. Foley's lawsuit was decided in favor of Mr. Lamancusa on a motion for summary judgment, many of the factual allegations raised in the Second Amended Complaint pertaining to Ms. Foley are factually incorrect based on the statement of material facts that was filed with the motion for summary judgment in Ms. Foley's own lawsuit and the decision pertaining to that motion for summary judgment.  Lamancusa Br. in Supp. 9-10; Ryhal Br. in Supp. 5.  Defendants also argue that Plaintiffs' allegations concerning Ms. Foley are barred by collateral estoppel.  *Id.*  As to Mr. Whiting, Defendants argue that because Mr. Whiting's lawsuit ended in a settlement, Plaintiffs are breaching a confidential settlement agreement by including allegations concerning Mr. Whiting in their Second Amended Complaint. Lamancusa Br. in Supp. 11.  Lastly, Defendants argue that the allegations concerning Mr. Whiting were raised in Plaintiffs' Complaint and Second Amended Complaint, but not Plaintiffs' First Amended Complaint and as such it was prejudicial for Plaintiffs to re-allege these facts.  *Id.* at 10-11.

Plaintiffs argue the allegations pertaining to Mr. Whiting and Ms. Foley were included to demonstrate a pattern of racketeering; not to unfairly prejudice Defendants.  Pl. Br. in Opp'n to Lamancusa 9-10; Pl. Br. in Opp'n to Ryhal 6-7.  Plaintiffs further argue that while Ms. Foley's case was decided at summary judgment, Magistrate Judge Dodge made no determination as to the truth of Ms. Foley's allegations in that decision.  Pl. Br. in Opp'n to Lamancusa 10; Pl. Br. in Opp'n to Ryhal 7.  Lastly, Plaintiffs argue that Mr. Lamancusa was not a party to the settlement and therefore is not subject to any confidentiality requirements.  Pl. Br. in Opp'n to Lamancusa 10; Pl. Br. in Opp'n to Ryhal 6.

To begin, the allegations pertaining to Ms. Foley and Mr. Whiting are relevant to Plaintiffs' RICO claims.  *See Kisano Trade & Invest Ltd. v. Lemster*, 2011 WL 5593678, at *11 (W.D. Pa. 2011) (finding plaintiff's allegations concerning wire fraud against individuals other than plaintiff were relevant to plaintiff's RICO claims as "[p]laintiffs are not limited to the predicate acts directed at them [and] may allege multiple schemes").  Further, Plaintiffs are allowed to plead facts pertaining to non-plaintiffs in their Second Amended Complaint.  *See Id.; see also Wilder v. Williams*, 1989 WL 67821, at * 3 (W.D. Pa. 1989) (holding that, taking the plaintiffs' allegations as true, the Court could consider lending institutions that were not plaintiffs as victims for RICO purposes when deciding a motion to dismiss).

Next, the Court acknowledges Defendants' arguments as to whether Plaintiffs' allegations as to Ms. Foley are false based upon the Opinion delivered by Magistrate Judge Dodge or are potentially barred by collateral estoppel.  The Court further acknowledges Defendants' arguments that pleading allegations concerning Mr. Whiting may violate a confidential settlement agreement entered into by the parties.  This being said, in order to determine whether these arguments are indeed true, the Court would need to consider numerous documents and facts outside the pleadings. This is not appropriate on a motion to strike as "motions to strike are decided on the pleadings alone."  *Zolga v. Provident Life and Acc. Ins. Co. of America*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) (citing *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007)).

Further, the Court notes that it is not currently convinced that collateral estoppel would apply in this case as Plaintiffs were not parties to the lawsuits previously brought by Mr. Whitting and Ms. Foley and there is no current showing that the Plaintiffs were in privity with Mr. Whitting and Ms. Foley.  *See Nationwide Mut. Fire Ins. Co. V. George V. Hamilton, Inc.*, 571 F.3d 299, 312 (3d Cir. 2009) (findings "that privity requires a prior legal or representative relationship between

a party to the prior action and the nonparty against whom estoppel is asserted"). The Court is similarly unpersuaded that there currently exists any evidence that Plaintiffs are bound to a settlement agreement entered into by a nonparty to this action, especially considering Plaintiffs' argument that Mr. Lamancusa was also not a party to the settlement agreement.

Instead, the Court's duty on a motion to strike is to determine whether Defendants have met their burden of demonstrating that the allegations of Ms. Foley and Mr. Whiting fall into one of the categories in Rule 12(f). *Roamingwood Sewer & Water Association v. National Diversified Sales, Inc.*, 509 F. Supp. 3d 198, 204 (M.D. Pa. 2020). This means, Defendants must demonstrate that the allegations are either redundant, immaterial, impertinent, or scandalous. *See* Fed. R. Civ. P. 12(f).

> 'Immaterial' matter is that which 'has no essential or important relationship to [any] claim[s] for relief.' *Wagner v. Holtzapple*, 101 F. Supp. 3d. 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D.Del. 1995)). 'Impertinent' matter consists of 'statements that do not pertain, and are not necessary, to the issues in question.' *Id.* (citation omitted). And 'scandalous' matter is that which 'casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

*Roamingwood Sewer & Water Association*, 509 F. Supp. 3d at 198. (alterations in original).

The Court does not find that Defendants have met their burden of showing that the allegations of Ms. Foley or Mr. Whiting fall into one of the above four categories. If proven, these allegations are potentially relevant to Plaintiff's asserted RICO claims. Therefore, Defendants' Motions to Strike will be dismissed.

**B. Motion to Dismiss**

**1. *Statute of Limitations***

Both Mr. Lamancusa and Mr. Ryhal argue Plaintiffs' have failed to bring their causes of action for Counts I and II within the applicable statute of limitations and therefore, should be

dismissed.  Lamancusa Br. in Supp. 12-14; Ryhal Br. in Supp. 7-9.  Specifically, Defendants argue that Ms. Russo's RICO claim is outside of the applicable statute of limitations and that both Ms. Russo and Mr. Argiro's § 1983 claims are outside the applicable statute of limitations.  *Id.*  In general, the statute of limitations is raised as an affirmative defense in an answer to a complaint.  *See* Fed. R. Civ. P. 8.    However, within the Third Circuit, a statute of limitations defense may be raised in a motion to dismiss pursuant to Rule 12(b)(6) where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal citation omitted).

### a.  Count I as to Ms. Russo

A four-year statute of limitations applies for a RICO claim.  *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987).  The Third Circuit follows the "injury discovery" rule for determining when the statute of limitations accrues.  *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000).  Under this rule, the Court "must determine when the plaintiffs knew or should have known of their injury."  *Id.*  This rule has both a subjective and objective prong. *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 250 (3d Cir. 2001).  Under the subjective prong, the "claim accrues no later than when the plaintiffs themselves discover their injuries."  *Id.*

Under the objective prong, the Court must determine whether the plaintiffs had "inquiry notice."  *Cetel v. Kirwan Financial Group, Inc.*, 460 F.3d 494, 507 (3d Cir. 2006) (citing *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006)); *County of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 641 (D. N.J. 2007).  This is a two-step process.  First, the defendant must "show the existence of 'storm warnings,' meaning 'any information or accumulation of data that would alert a reasonable person to the probability' that

[the] defendant[] ha[s] engaged in wrongdoing." *Janiszewski*, 520 F. Supp. 2d at 641. Second, the plaintiffs must "show that they exercised reasonable due diligence and yet were unable to discover their injuries. *Id.*; *see* Mathews, 260 F.3d at 252. In other words, "'a plaintiff is on inquiry notice of her wounds when the circumstances would have led a reasonable person to discover them through due diligence.'" *Gary Miller imports, Inc., v. Doolittle*, No. 1:11-CV-178, 2020 WL 7027483, at *9 (W.D. Pa. 2020) (quoting *Hawk Mountain LLC v. Ram Capital Group*, 689 Fed. Appx. 703, 706 (3d Cir. 2017)).

An injury under RICO, is an "actual monetary loss, i.e., an out-of-pocket loss." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). In the Second Amended Complaint, Ms. Russo details her injuries as the confiscation of several vehicles and other items on October 23, 2014. Second Amended Compl. ¶¶ 39-40, 60. Ms. Russo also alleges injury from damages to her property caused during the search on October 23, 2014. *Id.* at 61. Lastly, Ms. Russo alleges loss of value to the confiscated vehicles that were returned to her in June of 2019. *Id.* at ¶ 76, 78.

The Court will first determine when Ms. Russo learned of her injury under the subjective prong. Defendants contend that Ms. Russo knew of her injuries on October 23, 2014, after the seizure of her property. Lamancusa Br. in Supp. 13-14; Ryhal Br. in Supp. 8. Ms. Russo argues she did not have notice of her injuries until April 2017 when she learned her property would not be returned to her. Pl. Br. in Opp'n to Lamancusa 12; Pl. Br. in Opp'n to Ryhal 8. Therefore, under the subjective prong, Ms. Russo argues she did not know of her injury until injury April of 2017. *Id.* However, the Court notes that the Second Amended Complaint does not include any allegations as to the date when Ms. Russo learned of her injury.

Turning to the objective prong of the analysis, even taking Ms. Russo's argument respecting when she subjectively learned of her injury as true, it is nonetheless well established

that Ms. Russo's claim accrues not only when Ms. Russo subjectively knew of her injury, but also when she should have known of her injury.  Under the objective prong, Defendants argue that Ms. Russo should have been aware of the wrongdoing on October 23, 2014, when the subject property was seized.  Lamancusa Br. in Supp. 13-14; Ryhal Br. in Supp. 8-9.  In support of their position, Defendants cite to *Kadonsky v. New Jersey*, 188 Fed. Appx. 81, 85 (3d Cir. 2006), where the Third Circuit found that a plaintiff knew or should have known of his injury for purposes of a RICO claim at the time his money was seized.  *Id.*  However, in *Kadonsky*, the Third Circuit was deciding a motion for summary judgment and was presented evidence by the parties concerning the possible tolling of the statute of limitations, including the existence of storm warnings and the plaintiff's possible due diligence.  188 Fed. Appx. at 85-86.  This Court can only dismiss the Second Amended Complaint based on a finding that the applicable statute of limitations has run if that finding is clear based on the allegations in the Complaint.  The Court does not find that such clarity exists here.  Further, Plaintiff raises arguments that there are questions as to whether her statute of limitations has been tolled due to her due diligence in pursuing her RICO claim.  Pl. Br. in Opp'n to Lamancusa 13; Pl. Br. in Opp'n to Ryhal 9.

As Defendants have failed to identify "storm warnings" that served to notify Ms. Russo of her injury, the Court finds that it cannot hold that it is apparent from the face of the Second Amended Complain that Ms. Russo's RICO claim is untimely.  Further, although Ms. Russo has plead no specific facts as to her exercise of due diligence to discover her injuries the Court will not place the burden on Ms. Russo "to plead around the statute of limitations defense."  *See Germinaro v. Fidelity Nat. Title Ins. Co.*, 107 F.Supp.3d 439, 452 (W.D. Pa. 2015).  Therefore, Defendants' motions to dismiss Ms. Russo's RICO claim based on the statute of limitations is

denied, although Defendants may, if warranted, raise statute of limitations as an affirmative defense.

### b.  Count II

The statute of limitations applicable to a § 1983 claim is two years.  *Cruz v. SCI-SMR Dietary Services*, 566 Fed. Appx. 158, 160 (3d Cir. 2014).  A plaintiff's § 1983 claim accrues "on the date [the plaintiff] knew or had reason to know of the injury which is the basis of his action." *Syre v. Com.*, 662 F. Supp. 550, 553 (E.D. Pa. 1987).

### i.  *Ms. Russo's § 1983 Claim*

Defendants argue that Ms. Russo knew or had reason to know of her injury on October 23, 2014.  Lamancusa Br. in Supp. 13; Ryhal Br. in Supp. 9.  Ms. Russo has failed to respond to Defendants' arguments on this point.  However, Ms. Russo's injury for purposes of her § 1983 claim is, seemingly, identical to her injury for her RICO claim as the injury arises out of the same conduct.  In her Briefs in Opposition, Ms. Russo admits that she learned of her injury concerning the seizure of her vehicle in April of 2017.  Pl. Br. in Opp'n to Lamancusa 12; Pl. Br. in Opp'n to Ryhal 8.  Therefore, even if the Court were to give Ms. Russo the benefit of the doubt that she did not learn of her injury until April 2017, Ms. Russo's § 1983 claim would still be untimely as it accrued in April of 2019.  Because Ms. Russo did not file her Complaint until November 29, 2021, *see* ECF No. 1, Ms. Russo's § 1983 claim is untimely unless the statute of limitations is tolled.

Here, the only argument Ms. Russo raises is that she was subject to an ongoing seizure. *Id.*; Pl. Br. in Opp'n to Ryhal 9.  Although not explicitly stated, Ms. Russo appears to be relying on the continued violation doctrine.

> Under that doctrine, "'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'"  *Montanez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d

Cir. 2001)).  However, "'a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.'"  *Id.* (quoting *Weis-Buy Servs., Inc., v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005)).  Thus, a court must consider: "(1) whether the violations were related in subject matter and (2) whether the acts were recurring."  *Bennett v. Susquehanna Cnty. Children & Youth Servs.*, 592 Fed.Appx. 81, 84 (3d Cir. 2014) (citing *Cowell*, 263 F.3d at 293).

*Akan v. Summers*, 2:17-cv-00089, 2017 WL 6026433, at *4 (W.D. Pa. 2017).

Here, the original violation was the seizure of vehicles and additional items from Ms. Russo's properties.  Ms. Russo alleges that because some of the vehicles and property have not been returned to her, there is an ongoing seizure.  Pl. Br. in Opp'n to Lamancusa 12; Pl. Br. in Opp'n to Ryhal 9.  However, the actions of not returning seized property are not continuing violations and are instead continued ill effects from the original seizure in this case.  *See MacNamara v. Hess*, 67 Fed. Appx. 139, 144 (3d Cir. 2003) (holding "the defendants failure to return plaintiff's records . . . as well as their continued possession of copies of some of the records, may be ill effects of the original seizure, but they do not amount to continuing unlawful acts"); *see also Akan*, 2017 WL 6026433, at * (holding there was no continued violation where the only act was the seizure of the defendant's DNA and the continued possession of the defendant's DNA was only an "ill effect stemming from the original seizure"); *see also Johnson v. Cullen*, 925 F. Supp. 244, 250 (D. Del. 1996) (holding that a defendant's continued seizure of the plaintiff's property was not a continuing violation for statute of limitations purposes and the plaintiff's claims accrued based on the original seizure date); *see also Shannon v. Recording Industry Ass'n of America*, 661 F. Supp. 205, 211 (S. D. Ohio 1987) ("The fact that defendants retained the seized property is merely a consequence of the alleged illegal seizure and any injuries sustained by plaintiffs stem from that single unlawful act.").  Therefore, Ms. Russo's statute of limitations for her § 1983 claim was not tolled by the "ongoing seizure" of her property.

18

Further, Plaintiffs have submitted no arguments or pointed to any allegations that support a finding that Ms. Russo's statute of limitations should be tolled for any other reasons. Generally, for a § 1983 claim, state tolling principles apply unless they "contradict federal law or policy," and then federal equitable tolling principles will apply.[2] Plaintiffs have made no arguments that Ms. Russo's statute of limitations is tolled under Pennsylvania law and have instead focused their argument on the idea of an ongoing seizure. To be safe, the Court, however, will determine if the statute of limitations is tolled under Pennsylvania law based on the allegations and arguments raised by Plaintiffs. Under Pennsylvania law, the statute of limitations is generally tolled under either the discovery rule or based on fraudulent concealment. Under the discovery rule, the "statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (citing *Debiec v. Cabot Corp.*, 352 f.3d 117, 119 (3d Cir. 2003)). The Court finds that the discovery rule does not apply as Plaintiffs conceded in their Reply Brief that Ms. Russo was aware of her injury in April of 2017. The Court further finds that Plaintiffs have raised no allegations that would support tolling the statute of limitations based on fraudulent concealment. Lastly, the Court is aware of no such case, and Plaintiffs have pointed to no such case, where a Pennsylvania court has tolled the statute of limitations based on similar circumstances to this case. As such Ms. Russo's § 1983 claim is untimely, and the Court will dismiss Count II against Ms. Russo.

---

[2] Plaintiffs have made no assertions that Pennsylvania law conflicts with federal law or policy in order for federal equitable tolling to apply. The Court, however, notes that even if such argument was raised, the Court need not determine whether Pennsylvania law conflicts with federal law or policy because the federal equitable tolling principles would not apply under these circumstances. Federal equitable tolling principles are applicable where "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Hvizdak v. U.S.*, 2015 WL 5098745, at *4 (W.D. Pa. Aug. 31, 2015) (quoting *Santos ex. Rel. Baeto v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). There are no allegations or arguments by Plaintiffs that would support a finding that one of the three principles above applies to Ms. Russo.

Further, with respect to the passing of the statute of limitations period for Ms. Russo's § 1983 claim, the inadequacies in Ms. Russo's Second Amended Complaint are unlikely to be resolved by supplemental pleadings and, as such, this claim will be dismissed with prejudice.

### ii.  Mr. Argiro's § 1983 Claim

Mr. Argiro's injury consists of the seizure of his jeep and lost wages as a result of the allegations made against him and his extended house arrest.  Second Amended Compl. ¶ 271. Defendants argue that Mr. Argiro's jeep was seized in August of 2019 and that he was placed on house arrest in December of 2019.  Lamancusa Br. in Supp. 14; Ryhal Br. in Supp. 9.  Plaintiffs make no arguments concerning the date of Mr. Argiro's house arrest but concedes that the jeep was seized in August of 2019 and that based on that date Mr. Argiro's claim expired prior to the November 29, 2021 filing of the Complaint in this matter.  Pl. Br. in Opp'n to Ryhal 10.  However, Plaintiffs argue that because Defendants' threats to arrest Mr. Argiro and to seize his jeep continued into 2021, the Complaint is not untimely.  *Id.*

As stated above, in order for Mr. Argiro's claims to be timely, the statute of limitations must be tolled under the continuing violation theory or under Pennsylvania law.  Plaintiffs again appear to argue that Mr. Argiro's statute of limitations was tolled under the continuing violation theory.  To toll the statute of limitations based on a continuing violation theory, Mr. Argiro must prove that any continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.  *Montanez*, 773 F.3d at 481.  Here, the continuing acts plead by Mr. Argiro are that he was subject to harassment by Mr. Ryhal and an associate of Mr. Lamancusa. Second Amended Compl. ¶¶ 185-188.  In the Second Amended Complaint, Mr. Argiro pleads that the details of this harassment are included in his affidavit; however, the Court is not in possession of any such affidavit.  *Id.*  Mr. Argiro explains in his Response Briefs that this harassment included

threats of arrest and threats to seize Mr. Argiro's jeep.  Pl. Br. in Opp'n to Ryhal 10.  Based upon his reference to an affidavit and his argument respecting continuing threats, the Court will need to determine if it is beneficial to grant leave to Mr. Argiro to amend his allegations on these grounds.

The Court holds that Mr. Argiro's statute of limitations is not tolled under the continuing violation theory.  Any threats made concerning the arrest of Mr. Argiro are not relevant to his § 1983 claim for deprivation of property because an arrest is not actionable under § 1983 and the threat of arrest cannot be considered to determine whether his § 1983 claim is within the applicable statute of limitations.  Further, the threat to seize Mr. Argiro's jeep is not actionable under § 1983 because "[m]ere threats and verbal harassment, without more, are not actionable under § 1983." *Hodgin v. Agents of Montgomery Cnty.*, 619 F. Supp. 1550, 1553 (E.D. Pa. 1985) (citing *Ricketts v. Derello*, 574 F. Supp. 645, 647 (E.D. Pa. 1983)).  Therefore, the threat to seize Mr. Argiro's jeep cannot be considered a continuing violation even if Mr. Argiro had properly pled this fact in his Second Amended Complaint.

The Court further holds that Mr. Argiro's statute of limitations is not tolled under Pennsylvania law.  As stated above, under Pennsylvania law, the statute of limitations can be tolled under the discovery rule or based on fraudulent concealment.  Under the discovery rule, the "statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (citing *Debiec v. Cabot Corp.*, 352 f.3d 117, 119 (3d Cir. 2003)).  The Court holds that Mr. Argiro's claim is not tolled under the discovery rule as Plaintiffs conceded that Mr. Argiro's injury occurred in April of 2019 and his claim was untimely based on that fact.  Further, Plaintiffs have not alleged or argued that Mr. Argiro was not aware of his injury in April of 2019.  Next, the Court also finds that Mr. Argiro's claims are not tolled under

fraudulent concealment as Plaintiff's have presented no arguments or allegations that support such a finding. Lastly, the Court is aware of no such case, and Plaintiffs have pointed to no such case, where a Pennsylvania court has tolled the statute of limitations based on similar circumstances to this case.

As Plaintiffs have failed to allege any facts that support a finding that the statute of limitations should be tolled and have failed to raise any arguments in their briefing that the statute of limitations should be tolled, the Court finds that the statute of limitations had accrued for Mr. Argiro's § 1983 claim prior to the filing of the Complaint in this matter.[3] As such, Count II is dismissed as to Mr. Argiro. Further, the Court finds that any amendment to the Second Amended complaint would be futile and dismisses count II with prejudice as to Mr. Argiro.

### 2. Failure to State a Claim

Defendants have also moved to dismiss Plaintiffs claims on the grounds that they failed to state a cause of action as to Counts I and II. As the Court dismissed Count II with prejudice to both Ms. Russo's and Mr. Argiro's §1983 claims above, *see supra* B.1.b., the Court will address only whether Plaintiffs have stated a cause of action as to Count I.[4]

---

[3] As with Ms. Russo's § 1983 claim, Plaintiffs have made no assertions that Pennsylvania law conflicts with federal law or policy in order for federal equitable tolling to apply. The Court, however, notes that even if such argument was raised, the Court need not determine whether Pennsylvania law conflicts with federal law or policy because the federal equitable tolling principles would not apply under these circumstances. Federal equitable tolling principles are applicable where "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Hvizdak v. U.S.*, 2015 WL 5098745, at *4 (W.D. Pa. Aug. 31, 2015) (quoting *Santos ex. Rel. Baeto v. United States*, 559 F.3d 189, 197 (3d Cir. 2009)). It is clear that there are no allegations or arguments from Plaintiff that support a finding that the statute of limitations should be tolled under the first or third principle. Further, while Mr. Argiro has raised allegations of threats and harassments, the Third Circuit is clear that threats and harassment are not enough to toll the statute of limitations under the second principle. *See Kach v. Hose*, 589 F.3d 626, 643-45 (3d Cir. 2009) (holding that a plaintiff's statute of limitations accrued in October of 2001, and it was not tolled by the fact that she was held captive for ten years and not released until March of 2006).

[4] The Court will also not address Mr. Lamancusa and Mr. Ryhal's arguments that Count II is barred by *Heck v. Humphrey* as Count II has been dismissed with prejudice. *See* Lamancusa Br. in Supp. 15; *see also* Ryhal Br. in Supp. 10-11.

In Count I, Plaintiffs allege that Defendants' conduct violated 18 U.S.C. § 1962(c) of RICO.   Under § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engage in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."   18 U.S.C. § 1962.   Therefore, "[t]o establish a RICO violation under § 1962(c), plaintiffs must prove (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.   *Dongelewicz v. PNC Bank Nat'l. Ass'n*, 104 Fed. Appx. 811, 816-817 (3d Cir. 2004) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

### a. *Mr. Ryhal's Motion to Dismiss*

The Court will begin with addressing the individual arguments raised by Mr. Ryhal in his Motion to Dismiss.   The Court notes that, for the most part, Mr. Ryhal has duplicated and adopted the arguments made by Mr. Lamancusa in his Motion to Dismiss.   Mr. Ryhal raises an additional argument that the twelve paragraphs in the Second Amended Complaint containing allegations related to him are not enough to assert a compensable claim against him.   Ryhal Br. in Supp. 9-10. The Court notes for reference that the Second Amended Complaint is 271 paragraphs long.   *See* Second Amended Compl.   Mr. Ryhal argues that the only paragraphs containing allegations that reference him are the following:

> 1. Paragraph 8-Defendant Special investigation Unit Detective Richard Ryhal is an adult individual residing in Lawrence County with a professional address of 430 Court Street, New Castle, Pennsylvania, 16101, and at all material times acted under color of law.
>
> 2. Paragraph 9-Detecitve Richard Ryhal is sued in his official capacity for declaratory and injunctive relief and in his individual capacity for damages.
>
> 3. Paragraph 127-Another officer, Richard Ryhal, then arrived at the scene at 11:00 a.m. while Mr. Whiting was standing with Officers Costa and Mr. Bouye.

4. Paragraph 128-Officer Costa informed Officer Ryhal that Mr. Whiting was under arrest and instructed him to take Mr. Whiting to the police station.

5. Paragraph 129-Officer Ryhal inquired as to what Mr. Whiting was being arrested for and Mr. Costa responded that Mr. Lamancusa directed that Mr. Whiting be arrested and to take Mr. Whiting to a holding cell to all [sic] Mr. Lamancusa to interrogate Mr. Whiting.

6. Paragraph 130-While on the ride, Officer Ryhal inquired as to why Mr. Whiting was under arrest and when Mr. Whiting indicated that he did not know for what he was arrested for, Officer Ryhal indicated that he would like to know why he was transporting Mr. Whiting and for what he had been arrested.

7. Paragraph 172-Upon arriving at the Union Township Police Barracks Mr. Argiro was apprehended by Richard Ryhal.

8. Paragraph 173-Officer Ryhal read Mr. Argiro his Miranda rights and informed him that the powder coat pain tested positive for narcotics.

9. Paragraph 175-Despite requesting counsel, Officer Ryhal continued to question Mr. Argiro and he refused to answer his questions.

10. Paragraph 177-Officer Wickline asked Officer Ryhal what he should call the black paint, and Officer Ryhal responded "just say its heroin to spice it up."

11. Paragraph 185-Since that time, Mr. Argiro has been harassed by Richard Ryhal.

12. Paragraph 187-An associate of Joshua Lamancusa and an ex-corrections officer called Mr. Argiro and informed him that if he pursued his allegations of harassment against Mr. Ryhal that he would kill Mr. Argiro's girlfriend in front of him and then kill Mr. Argiro.

Ryhal Br. in Supp. 3 (quoting Second Amended Compl., ¶¶ 8-9, 127-30, 172-73, 175, 177, 185. 187). Further, Mr. Ryhal argues that Count I does not include any "reference to [Mr.] Ryhal's alleged actions and/or inactions and [includes] no suggestion that [Mr.] Ryhal violated RICO." *Id.* The Court notes that Mr. Ryhal does not raise arguments specifically addressing this point beyond the conclusory arguments detailed above. This being said, Mr. Ryhal raises an additional argument, elsewhere in his motion, that Plaintiffs have failed to allege a pattern of racketeering activity to support their RICO clam. *Id.* at 13-15. In support of this argument, Mr. Ryhal argues

that the allegations against Mr. Ryhal only demonstrate that he was "involved in the valid arrest

of Argiro; but had absolutely no involvement in the Russo allegations . . . [and a]s such, there is

no evidence that [Mr. Ryhal] was involved in any pattern of racketeering. *Id.* at 14. Mr. Ryhal's

remaining arguments will be addressed below in conjunction with the arguments raised by Mr.

Lamancusa.

Plaintiffs argue that the "allegations in the Second Amended Complaint, as they relate to

[Mr.] Ryhal reflect the manner in which Lamancusa utilized his staff to implement his on going

[sic] extortion." Br. in Opp'n to Ryhal 2-3.

While Mr. Ryhal's arguments on these grounds are brief, the Court assumes that Mr. Ryhal

is arguing that Plaintiffs have failed to plead any facts that Mr. Ryhal was participating in the

enterprise or involved in the commission of the predicate acts. The District of New Jersey quoting

the Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), provides that

> [t]o survive a Rule 12(b)(6) motion to dismiss [Plaintiffs'] Section 1962(c) claim,
> Plaintiffs need only allege that the . . . Defendants 'participated in the operation or
> management of the relevant enterprise.' *Reves*, 507 U.S. at 184, 113 S.Ct. 1163.
> Thus, to participate directly or indirectly in the conduct of an enterprise's affairs
> for purposes of § 1962(c), one need only play "*some part*" in directing the
> enterprise's affairs." *See id.* at 179, 113 S.Ct. 1163 (emphasis added). It is not
> necessary for Plaintiffs to plead that the . . . Defendants had primary responsibility
> for operating and managing the affairs of the RICO enterprise. *Id.*
> * * *
> Plaintiffs must also allege facts indicating that the defendant participated in the
> operation or management through a pattern of racketeering activity (i.e., if his
> management participation is conducted via a pattern of criminal acts) and
> demonstrate a nexus between the person and the unlawful conduct in the affairs of
> an enterprise. *United States v. Parise*, 159 F.3d 790, 796 (3d Cir. 1998).

*South Broward Hos. Dist. V. MedQuist Inc.*, 516 F.Supp.2d 370, 391-92 (D. N.J. 2007).

The Court finds that the allegations against Mr. Ryhal are sufficient to survive a motion to

dismiss on these grounds. Plaintiffs sufficiently plead that Mr. Ryhal was involved in the

enterprise's affairs because Plaintiffs plead that he is a Detective in the Special Investigation Unit

and was involved in the arrest of Mr. Whiting and Mr. Argiro. Further, reading the Second Amended Complaint in the light most favorable to Plaintiffs, Plaintiffs have sufficiently plead a nexus between Mr. Ryhal and the unlawful conduct of the enterprise. Plaintiffs plead that as part of the racketeering scheme, Mr. Lamancusa used the enterprise – the Special Investigation Unit of which Mr. Ryhal was a Detective – to defraud and extort individuals by filing false criminal charges against them, fabricating evidence against them, and seizing their property. Second Amended Compl. ⁋⁋ 10, 14-16. Plaintiffs further plead that Mr. Ryhal was involved with the arrest of two of these individuals and was involved in the fabrication of evidence against Mr. Argiro. Therefore, on these grounds, Plaintiffs have plead sufficient allegations to allege that Mr. Ryhal was involved in the operation or management of the relevant enterprise and therefore, Mr. Ryhal's Motion to Dismiss is denied on these grounds.

The Court will address Mr. Ryhal's remaining arguments in conjunction with the arguments raised by Mr. Lamancusa in his motion to dismiss as the arguments are substantively identical and involve the same analysis.

### b. Defendants' Joint Arguments

Defendants do not argue that Plaintiffs' Second Amended Complaint fails on all four prongs of a RICO claim; instead, Defendants argue only that Plaintiffs failed to plead a pattern of racketeering activity. As such, the Court, for the purposes of these motions only, will assume that Plaintiffs have adequately plead the remaining elements of a § 1962(c) violation.

A pattern of racketeering activity "requires at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). Further, to establish a pattern of racketeering activity, the two predicate acts must be related and "amount to, or threaten the likelihood of, continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 229 (1989). Plaintiffs

allege the predicate acts of theft by extortion, theft by unlawful taking, robbery, and institutional sexual assault.  RICO Case Statements of Russo and Argiro, ECF Nos. 16, 30.  Extortion and robbery are predicate acts recognized by 18 U.S.C. § 1961.

Defendants do not address whether Plaintiffs have plead facts that show their alleged predicate acts amount to continued criminal activity, instead, they only argue Plaintiffs have failed to plead facts that show the alleged predicate acts are related.  Further, Defendants do not argue that Plaintiffs failed to plead elements sufficient to establish the underlying predicate acts, and as such, the Court will not enter into an analysis on this point.

Related acts are "acts that have the same or similar purposes, results, participants, victims, methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240.

Defendants argue that the pleadings concerning Ms. Russo, Mr. Argiro, Ms. Foley, and Mr. Whiting "have nothing to do with each other."  Lamancusa Br. in Supp. 18; Ryhal Br. in Supp. 14. They argue that the predicate acts are "not part of a scheme for similar purposes, do not have similar results, do not involve similar participants or victims or use the same methods of commission to set forth a pattern." *Id.*  Instead, Defendants argue the allegations only demonstrate the actions of a District Attorney prosecuting criminal matters. *Id.*  Specifically, Defendants argue that the predicate acts are not related because the allegations concerning Ms. Russo concern extortion of her son and not extortion against Ms. Russo herself. *Id.* at 19; Ryhal Br. in Supp. 14-15.  Further, Defendants point to the lack of similarity between the allegations involving Mr. Whiting and Ms. Foley because these allegations do not include any facts that either Mr. Whiting or Ms. Foley were extorted.  Lamancusa Br. in Supp. 19; *see* Ryhal Br. in Supp. 15 (adopting the arguments of Lamancusa).  Lastly, Defendants argue that the alleged "racketeering" individuals

27

involved are not the same as Mr. Ryhal is only mentioned in the allegations against Mr. Argiro and not against Ms. Russo.  *Id.* at 19; Ryhal Br. in Supp. 15.

Plaintiffs argue that the allegations show that Mr. Lamancusa targeted victims by presenting them with plea agreements that would allow the victims to plead guilty to lesser charges in exchange for money, property, and/or sexual favors.  Pl. Br. in Opp'n to Lamancusa 15; Pl. Br. in Opp'n to Ryhal 12.  Plaintiffs further argue that they have presented sufficient allegations that the same individuals were involved because they have alleged that Mr. Lamancusa and the Special Investigation Unit was involved in each of the predicate acts and that vulnerable victims were the targets of these predicate acts.  Pl. Br. in Opp'n to Lamancusa 17; Pl. Br. in Opp'n to Ryhal 13-14.

The Court agrees with Defendants that Plaintiffs have failed to allege sufficiently related acts in order to state a claim for a RICO violation.  Plaintiffs' arguments that the allegations culminate in one conclusive purpose that Mr. Lamancusa was targeting individuals by presenting them with plea agreements that would allow the victims to plead guilty to lesser charges in exchange for money, property, and/or sexual favors is simply not a reasonable summary of the allegations.  The allegations concerning Ms. Russo deal with a situation where an individual, Mr. Luptak, was offered a lesser plea with the understanding that Mr. Lamancusa would keep the property seized from Ms. Russo.  While the allegations concerning Mr. Argiro deal with a situation where Mr. Lamancusa and the Special Investigation Unit allegedly lied about the presence of drugs in Mr. Argiro's vehicle, asked him to serve as a confidential informant, and then years later (for reasons not stated in the allegations) trumped up the charges against Mr. Argiro forcing him to take a plea. While there is an allegation that Mr. Argiro's vehicle was seized as part of the investigation, there are no allegations that Mr. Argiro was offered a lesser plea deal in exchange

for Mr. Lamancusa's ability to keep Mr. Argiro's vehicle or any other property.  Next, as to Mr. Whiting, while there are allegations that Mr. Whiting was told charges would not be brought against him if he sold the shares in his roll-off business to Mr. Mims and Mr. Porter, there are no allegations that Mr. Lamancusa or the Special Investigation Unit benefited from the sale of Mr. Whiting's roll-off business.  Further, while there are allegations that Mr. Whiting's hotel was sold in a tax sale, there are no allegations that Mr. Lamancusa or the Special Investigation Unit were involved in the tax sale of the hotel.  Lastly, the allegations concerning Ms. Foley do not involve the extortion of property and instead involve allegations that Mr. Lamancusa asked Ms. Foley to work for him as a confidential informant and/or provide sexual favors with the understanding her son would be returned to her if she did.

These alleged predicate acts (which, if proven to be true, are, of course, plainly disturbing violations of public trust) do not involve the same purpose, results, participants, or methods of commission and are therefore, not sufficiently related for RICO purposes.  There are no allegations that the purpose of all the alleged acts was to extort individuals for their property, money, or sexual favors.  Accepting as true the facts alleged in the Second Amended Complaint, the purpose of Ms. Russo's scheme, and potentially Mr. Whiting's scheme, was to extort property.  While the purpose of Ms. Foley's scheme was to extort sexual favors.  Lastly, the purpose of Mr. Argiro's scheme is unclear to the Court outside of allegations that Mr. Argiro was asked to serve as a confidential informant and refused.[5]  While the allegations suggest that all four schemes may have enriched Mr. Lamancusa personally and involved alleged instances of police misconduct, they all involved uniquely different purposes for analyses under RICO.  The Court does not find that all four schemes had the same purpose and likewise, for the same reasons, does not find that the schemes

---

[5] Further, the Court is not convinced that a predicate act has been plead concerning Mr. Argiro and Ms. Foley, but this argument was not raised by Defendants.

had the same results. *See Hughes v. Halbach & Braun Industries, LTD.*, 10 F. Supp. 2d 491, 500 (W.D. Pa. 1998) (Where the Court held that the plaintiff had not plead related predicate acts as to the five alleged schemes where only two of the alleged schemes involved the same purpose and results. This was true even though the methods of commission were the same and the schemes involved some of the same participants.). Further, the schemes likewise do not involve the same participants. Ms. Foley's scheme involves CYS and Mr. Whiting's scheme involves unrelated individuals Mr. Mims and Mr. Porter. While it is true that Mr. Lamancusa and members of the Special Investigation Unit are allegedly involved in each scheme, "the fact that some of the schemes involve[] the same participants, does not mandate a finding of relatedness." *Id.* at 501.

As such, Plaintiffs have not alleged a common plan between the schemes and have not satisfied the relatedness requirement. Therefore, Plaintiffs have not stated a cause of action that Defendants violated 18 U.S.C. § 1962(c) and Count I will be dismissed against Defendants. As Plaintiffs have amended their Complaint twice already, the Court will not allow Plaintiffs to amend their Complaint for a third time. As such, Plaintiffs' Second Amended Complaint is dismissed with prejudice.

**IV.    Conclusion**

For the reasons discussed above, the Court will grant Mr. Lamancusa and Mr. Ryhal's Motions to Dismiss with prejudice.

BY THE COURT:

*/s/ Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: April 3, 2023

cc: All counsel of record